## W. F. CAIN et al. *v.* DOUGLASS BUNKLEY.

1. HUSBAND AND WIFE: WIFE'S POWER TO MAKE A WILL.—A *feme covert* has no power to dispose by will, without the consent of her husband, of her separate estate, held under the laws of this State. See *Davis* v. *Foy*, 7 S. & M. 67; *Frost* v. *Doyle*, Ib. 68; *Berry* v. *Bland*, Ib. 83; *Doty* v. *Mitchell*, 9 S. & M. 435; *Curll* v. *Compton*, 14 S. & M. 58; *Selph* v. *Howland*, 23 Miss. R. 268; *Garrett* v. *Dabney*, 27 Ib. 335; *Knott* v. *Lyon*, 26 Ib. 548; *Cameron* v. *Cameron*, 29 Ib. 120.

2. SAME: SAME: ABANDONMENT OF WIFE BY HUSBAND.—The wilful and deliberate abandonment of the wife by the husband, for three months previous to her death, will not invest her with the rights and privileges of a *feme sole*, so as to authorize her to make a will, without his consent. See 2 Kent's Com. 155, *et seq.*

APPEAL from the Court of Probates of Amite county. Hon. R. M. Neilson, judge.

The appellants, Cain and Garner, filed their petition in the court below; in which, it is stated, that Amanda J. Bunkley, wife of appellee, in December, 1857, died at the residence of Cain, which, at the time, was her fixed domicil; that, for three months previous to her death, she was living separate and apart from her husband, he having abandoned her for that space of time, refusing to see her, and refusing and neglecting to perform any of his duties as husband, even in her last illness. That said Amanda and the appellee were married in 1853; and, after the marriage, said Amanda acquired, by distribution, a separate estate, consisting of land and slaves, which she owned and possessed at the time of her death. That said Amanda died without issue, and, previous to her death, she made and published her last will and testament, which was duly attested, by which she disposed of all her estate, and appointed the appellants her executors. The petition prays that the will be admitted to probate, and that the appellee be cited to appear and show cause, if any he can, why probate of the same should not be made.

The appellee appeared, and demurred to the petition, on the ground of want of testamentary capacity in his wife. His demurrer was sustained, and the petition dismissed, and probate of the will

refused. From this decree, Cain and Garner, the executors nominated in the will, appealed.

The reasons assigned are :—

1st. The sustaining of the demurrer to the petition; and

2d. The refusal to probate the will.

*W. P. Harris,* for appellants.

The questions to be decided in this cause, are :—

1st. Can a married woman dispose of her separate property, acquired by the operation of the "woman's law," by will or testamentary act, without the consent of the husband?

2d. And if the husband's assent be necessary to the validity of such will, is it waived or rendered unnecessary by an abandonment of the wife by the husband, when such abandonment is wilful, deliberate, and absolute?

· The appellants maintain the affirmative of these propositions.

The power of a married woman to make a testamentary disposition of personal property, held by her as her separate estate, without the assent of her husband, results from certain propositions admitted by this court, and admitted with deliberate circumspection.

The system of equity, as known in the jurisprudence of England, and, as part of that system, the peculiar doctrine, that a married woman might acquire personal property, and hold the same to her sole and separate use, exclusive of the marital rights of the husband, existed here at the time of the passage of the "woman's law." The doctrine prevailed here as part of our general system. Its precise character may be stated with absolute precision. This separate estate might be created in a married woman by deed or bequest, both before and after marriage. The husband's control being excluded, dominion over the property was conferred, by the Court of Chancery, on the wife; and this separate estate was invested with all the incidents of ownership, including the absolute power of disposition, unless by the terms of the deed creating the estate that power was, by express words, or necessary implication, restricted. *Frazier* v. *Brownlow,* 3 Iredell's Eq. 237.

"The right is not imparted by the instrument, but conferred by equity, and not created by the settler." *Harris* v. *Harris,* 7 Iredell's Eq. 111, Ruffin, C. J.

The right of property included the power to dispose of it; and, in order that the estate might be made to answer the purpose of its creation, the courts of equity found it necessary to give to the wife an artificial character in equity; and, in respect to that property, they held that she was not a married woman; and that all the common law disabilities, and all statutory disabilities, resulting from marriage, were, in the contemplation of a court of equity, removed. There was a total negation of the marital relation; and the wife, in her dominion over, and in her dealings with her separate estate, was a single woman; as much so as the Queen of England is a single woman as respects the powers of the crown, and the executive functions of the head of the British empire. The marriage tie was out of the view of the court. The separate estate gave to the wife a separate and independent existence. As a single woman, and as *such she was regarded by the courts of equity*, she had the powers of a single woman over her estate; and, of course, the power to make a will disposing of it.

At common law her contracts were void; but in equity, if she contracted with reference to her separate estate, she contracted as a single woman, and her contracts were valid. By the common law, a will of her personal chattels was void, unless it was assented to by the husband; and, by our statute of wills, she might be denied testamentary power as a married woman; but in equity, as to her separate estate, she was not a married woman, and therefore not within the prohibition of the statute, or the common law; and could, in consequence, make a will without the assent of her husband.

Some difficulty and confusion has been produced by the doctrine advanced by a few authorities, that the capacity of a married woman, owning a separate estate, is created by the deed conferring the estate, and that she has no powers except those created by the deed. It is true that her power, in one sense, depends upon the terms of the deed; but it is not true that she has no power except what is expressly given by it; for her power is absolute under those deeds which simply create the separate estate, and are entirely silent as to the extent of her power over it. The power and capacity of the married woman, over her separate estate, result from ownership; or, perhaps, it may, with more accuracy, be said, that

they are the creatures of the courts of equity. They are not derived from the deed, and are always recognized, unless they are restricted by the terms of the deed. It may be asserted, as the true rule on this subject, that, unless the deed conferring the estate has by express terms, or by necessary implication, restricted the power of disposition, by limiting it to a particular mode, other modes of disposition, incident to ownership, are not excluded. 7 Iredell Eq. 111.

It may be stated, as an undeniable proposition, that, if the deed merely confers upon a married woman, personal property, to her sole and separate use, free from the control or liabilities of the husband, without any designation of the manner in which it may be disposed of, and the estate is conveyed by such terms, that, at her death, it would go or descend according to the law of descents and distribution—she may dispose of it by will, without the assent of her husband.

It has so happened, that the leading cases on which the whole doctrine of the courts of equity rests in England, and in this country, are cases in which the deed did not grant power, but simply granted an estate; and in which it was admitted that, notwithstanding the deed, the husband's marital rights would attach on the death of his wife, in case he survived her. *Fettiplace* v. *Gorges*, 1 Ves. Jun. 46; *West* v. *West's Ex'rs*, 3 Randolph, 373.

The marital right is suspended, but not extinguished, and is subject only to the qualification imposed by the deed, and to be revived on the contingency of his surviving his wife.

This serves to indicate the distinction between the separate estate in equity, and those chattels and choses in action, which the wife might, at common law, dispose of by will, made by the husband's consent. Chattels in possession were the husband's chattels; and choses in action were his if he reduced them into possession during the life of the wife. This interest, at common law, could not be divested without his consent. The will was, in these cases, really the will of the husband, and operated on him by estoppel; but the separate estate in equity, though subject to the claim of the husband, as survivor, was allowed to be disposed of, without his consent, by the will of the wife. 3 Bro. C. C. 8.

This difference undoubtedly existed. In the case of *Fettiplace*

v. *Gorges*, the Lord Chancellor expressly stated, that the separate estate in that case, on the death of the wife, would go to the husband ; and such was the case in *West* v. *West's Executors*. Yet in both cases the wills were established, without the consent of the husband given at any time, and, in fact, against his positive protest. In *West* v. *West*, he contested the probate, and appealed from the decree establishing the will.

The importance of this position will be at once perceived, when we consider the position of the husband with respect to his wife's separate estate, prior to the "woman's law," and his position with respect to her separate estate derived under that law.

In respect to both, his marital rights are only suspended during the wife's life.   His marital right in both cases would attach to the estate on certain contingencies; but in respect to these contingencies, his position under the married woman's law is less favorable, and his interest less valuable, because, before that law his right depended only on his surviving the wife ; while under the statute, it depends upon a double contingency, the *death* of the wife *without issue* during the life of the husband.

It therefore remains to be considered, whether in the view of the courts of equity, the interest of the husband under the statute, is entitled to more respect than it received before the statute.

We have delineated the separate estate, and the doctrine of the courts of equity respecting it, as they existed and prevailed here at the time of the passage of the woman's law, and forming a part of that great system of laws which surrounds on all sides, like the atmosphere we breathe, and penetrating by its own energy to every condition of property, and to every relation of life, from which it had not been expelled by positive legislation.   It was regarded as a wise and provident system ; and one of the chief embellishments of that body of laws, which is unquestionably the noblest monument of human wisdom of which we can boast, was the "separate estate."

The legislation which we thought fit to adopt, was not antagonistical to the system which prevailed, but was modelled upon it, and in harmony with it.   The statute but added to the means by which the "separate estate" might be created ; but it was the separate estate as known in equity.   Our courts at once recognized the estate as that which had long been the subject of equitable

cognizance. In *Mitchel* v. *Otey*, 23 Miss. 239, this court proclaimed the doctrine, that although the statute had recognized the separate estate, and had supplied to every gift or bequest of personal property to a married woman, the words, "to her sole and separate use, free from the control and liabilities of the husband," yet it was the estate known in equity; and to the courts of equity, parties must apply in order to reach it. Again, in *Knott* v. *Lyon*, 26 Miss. 428, and *Cameron* v. *Cameron*, 29 Miss. 112, the court placed the husband under the statute, precisely where he stood with respect to the separate estate before the statute, declaring that the husband's marital rights were not extinguished, but suspended, and that they would attach, upon the death of the wife without issue, the husband surviving, precisely in the same way that they would attach under a deed conferring separate estate upon the wife. The position was distinctly announced, that the act did not confer any rights upon the husband, but rather abridged his rights at common law ; that is to say, his rights stood affected by the statute, as they were affected by a deed creating the separate estate before the statute: they were modified to the extent to which they were excluded by the statute. In other words, the statute was enabling to the wife, but disabling to the husband. The wife's power and capacity were enlarged, and the rights of the husband diminished.

Again, in *Lee* v. *Bennett*, this court, evidently on full consideration, and with due respect to what had been previously settled by its own decisions, and with careful consideration of the bearing of the doctrine it asserted, said that the "woman's law," in prescribing certain forms by which a married woman might convey or encumber her separate estate, had regard only to conveyances and contracts *inter vivos*, leaving the testamentary power to be regulated by the general law as it stood before the statute; and appealing to that general law, and not to the statute (for the statute makes no provision, and gives no power to make a will, either with or without the assent of the husband), declared that the power existed. The meaning of the court as to the measure and extent of that power, is to be collected from the authorities cited, and especially from the case of *West* v. *West*, 3 Randolph, which is invoked by the court, and commended by the court as a sound exposition of the general law. It is sufficient to say, that in the case from 3d Randolph,

the husband's marital rights were only excluded during the marriage, and attached on the death of the wife, and that the husband did not consent to the will, was living separate from his wife, and contested the probate, and yet the will was held to be valid.

The proposition established by the court was this, that the acts known as the "married woman's law" were not designed to take away any powers which resulted to the wife, under the general doctrines of the courts prior to its passage, but rather to enlarge them ; and that in presenting the mode in which she might dispose of property *inter vivos*, it was not the purpose of those acts, to change the law in respect to a disposition of property to take effect after her death.

The statute makes no provision for disposing of the property by will, whether with or without the consent of the husband. That mode of disposition is not mentioned, and yet the court said it existed by virtue of the general law, meaning the principles of equity in regard to a married woman's power over her separate estate, and by that law the assent of the husband was not necessary.

The court evidently was speaking of property acquired under the "married woman's law," and seemed to see no difference between the separate estate under a deed, and the separate estate under the statute. It did not appear in the case how the married woman derived the property, and in the absence of any proof on the point, the presumption would be that it was derived under the statute, and the court evidently wished to be understood as speaking of the estate as derived under our statute.

Did the court intend that we were to go to the old law for the power to make a will, and to the new law for the assent of the husband ?

Under the old law, the assent was not required in respect to separate estate, but it was necessary in regard to what was not separate estate, and in respect to which the husband's right was not dependent on the contingency of survivorship, but was available during coverture. On what principle could we insist that under a statute, which actually impaired the marital right of the husband as it existed before, the assent of the husband is required, by implication, when by the general law it was not required when that right was of greater value to the husband than it is under the statute.

The possibility of the husband's rights attaching by survivorship, was not thought to be a sufficient reason for requiring his assent, as appears by the authorities cited by the court. Can it then be supposed that the court intended to decide that this possibility required it under the statute ? Certainly not.

The assent of the husband was given in the case of *Lee* v. *Bennett*, and the court held the will to be valid; but the scope of that decision goes further. The reason of requiring the assent of the husband, to her deed or contracts *inter vivos*, is to preserve the peace and harmony of the marriage relation, rather than to require of the husband a waiver of his rights.

The court could not have relied upon the common law, because that had no reference to the separate estate, which it did not recognize at all. It had reference to property and rights, in which the husband had a direct interest, as owner, or of which he could make himself the owner, during the marriage.

When the court refers to a case, as settling the law in regard to the right to make a will, and as showing that the right was not affected by our statute of wills, and that the law thus settled, prevails, notwithstanding the "married woman's law," and that case is one which declared a will of separate property valid, though made without the assent of the husband : what is the conclusion to be drawn from it ? If the power depends on the general law, and not upon any statute, and that general law dispenses with the consent of the husband, how do we escape the conclusion that the will of Mrs. Bunkley is valid ?

Will it be contended that a statute which enlarges the power of the wife and abridges the rights of the husband, has, on principle, or by inference, made it necessary ?

In what respect does Mrs. Bunkley's will differ from the will in *West* v. *West?* There the parties were living separate; there the husband did not assent, and the property disposed of, would have belonged to him at the death of the wife. The court has said, in terms most explicit, that *West* v. *West* contains the law as it existed here, prior to the "woman's law," and that the "woman's law" has not affected the testamentary power, as it was declared to exist in that case.

The common law knew nothing of the separate estate, and the

will of a married woman could only operate on property which the husband might claim and dispose of at any time during the marriage. He could sell the chattels of the wife in possession, and he could assign her choses in action, or reduce them to possession, and then dispose of them. He was thus so far the actual owner, that his consent to the disposition of them was, on principle, indispensable. But we have seen that the right to obtain the separate estate after marriage, contingent on his surviving the wife, was never in equity regarded as of sufficient dignity to render his consent to a will made by the wife necessary. Now it has been expressly declared by this court, in *Cameron* v. *Cameron* and *Knott* v. *Lyon*, that the right of the husband to take the separate estate at the death of his wife, without issue, is precisely what it was before the statute; and if before the statute, in equity, this right was not regarded as entitling the husband to oppose the will of the wife, why should it be so held now?

The reason of requiring the husband to unite with the wife in her conveyances, *inter vivos*, is the same under the statute as it was under the common law, as respects that property of which she was the absolute owner, to wit, lands. It is founded in the married relation, and not upon the notion that the conveyance affected the property rights of the husband. 2 Kent Com. 137. But as to the separate estate, as to which she is a *feme sole* to every intent, in equity, such consent was not deemed necessary.

We propose now to notice briefly the argument which may be founded on the dicta of judges, respecting the power of the wife, under the statute. We find it stated in one case, that the statute is in restraint of her powers as a *feme sole* over her separate estate, and in another that she has no powers except those conferred by statute. The statute confers ownership, and according to the equity doctrine, power follows the ownership.

It has been settled, beyond all doubt, that a married woman owning separate estate, under the statute, may dispose of it by gift, by sale, by exchange, by mortgage, for her own, her husband's, or a stranger's debts. Does any one have more power over his estate? The right of disposition is unlimited. We have a statute that declares that no estate in lands shall be conveyed, except by deed, in writing, &c. Was it ever contended that this statute was

in restraint of the powers resulting from ownership ? The privy examination of married women had but the sole object of ascertaining whether the wife was, in fact, doing as she pleased with her own property; and the uniting of the husband in the deed, was merely to protect her against imposition, and to "signify his concurrence." Under the statute, the privy examination and the joinder of the husband in the deed, are for no other purpose. We have no new principle of law inaugurated by the statute. No deed of settlement ever gave power more ample. But it is needless to analyze the proposition any further. This court has deliberately decided that these provisions of the statute related to conveyances *inter vivos*, and not to dispositions to take effect after the wife's death. The reason which required some safeguards to be thrown around the wife, as to the property intended to secure her against the improvidence of her husband and herself, do not apply to those dispositions, which are to take effect when she *is dead*. The interests of her offspring are not regarded by the statute, except to give them a preference over the husband. They take as heirs, and not as remainder-men. If the court intends to make the consent of the husband indispensable to the will of the wife, it leaves him the power to divert the property from her issue to his own ; and will it be contended that the statute had less regard for the children of the wife, than for the husband, when the children take in preference to him on his wife's death ? Is there not greater reason to hold that she cannot make a will without the consent of her children ? Is the contingent interest of the husband—secondary to the rights of the children—superior to those of the children ?

Is there, we ask, anything so monstrous in the proposition that a wife may dispose of her separate property, by will, without her husband's consent, that we should be startled at it ? It has been sanctioned for more than a hundred years, by the uses, and system of laws, in the world.

As to the power of the wife to make a will, of her separate estate, without the consent of her husband, we cite, in addition to the authorities already cited, 1 Lomax Ex. 12; Clancy, 308; 1 Williams Ex'rs, 49. Of course, if the will would be upheld in equity, it should have been admitted to probate.

There is, however, in this case, a ground on which the decree

must be reversed, although the court shall be of opinion that the assent of the husband, as a general proposition, is required.

It is admitted by the demurrer, that the husband had intentionally abandoned the wife for some time prior to the date of the will, and refused to perform the marriage vows. It has been long settled, both in England and this country, that such an act by the husband amounts to a surrender, or operates as a forfeiture of his marital rights, and restores the wife to the condition of a *feme sole*, as to the control of her personal estate. This doctrine is founded in the principles of justice. The marriage is a continuing contract, imposing certain duties, and conferring certain rights on the husband, and he will not be permitted to assert the rights it confers, and yet deliberately refuse to perform the duties it enjoins. *Cecil* v. *Juxon*, 1 Atkyns, 278; *Starrett*, v. *Wynn*, 17 Serg. & Raw. 130; *Hammond* v. *Magee*, 4 Johns. Ch. 317. It would subvert every principle of reason and justice, to permit the husband to abandon his wife, during her lifetime, and then to come forward at her death, to assert his "marital rights."

*H.* and *W. S. Cassidy*, for appellee.

We will examine the question of testamentary capacity first, without regard to the abandonment alleged; and second, the effect of that abandonment on her powers.

The question presented under the first head is, has a married woman, holding property by distribution under the statute of descents, the power to make a will, without the consent of her husband?

The general rule, with reference to the testamentary capacity of a married woman, is, she cannot make a will. To this rule there exist the following exceptions: 1st. A married woman may by will, dispose of property settled to her separate use. 2d. Of things held in *autre droit;* and 3d. Of her choses in action, and other property in which her husband has an interest, by his consent.

In the court below, it was attempted to locate the power to make this will under the first exception; and also, a general power was claimed without the consent of the husband. The facts alleged in the petition, show that the property disposed of was derived from

distribution, from the estate of Mrs. Bunkley's father, and not set-
tled to her separate use, in the technical sense of that term.    But,
inasmuch as the marriage and possession of the property, was during
the operation of the Statute of 1846 with reference to the property
of married women, it was claimed that the provisions of that statute,
created an estate in the wife equivalent to a separate estate under
settlement, and carrying with it all the incidents and powers of
such an estate.    The incidents of an estate settled to the separate
use of the wife, under the laws of England, were the exclusion of
all interest or control of the husband in or over such property, and
constituting the wife a *feme sole* as to the management and disposi-
tion of such estate.    But the Statute of 1846 falls far short of
creating such an estate in the wife holding property by descent or
distribution, and creates two important modifications of such an
estate.    1st.  It does not exclude the control of the husband in the
only mode of disposing of such an estate pointed out in the statute,
to wit, by sale;  but, on the contrary, requires his consent to make
the disposition legal.  Hutch. Code, 498, sec. 4.    2d.  It gives the
husband a vested right to succeed to the estate upon the death of
the wife without issue.    The interest of the husband in his wife's
property, after her death without issue, is the same by the Statute
of 1846, as it was under that of 1839;  or rather, to speak more
accurately, neither of these statutes have changed his common law
right of taking her estate upon her death without issue.  His rights,
in this respect, have been repeatedly held by this court to be : 1st.
A vested right, by virtue of the marriage, to take the slaves of the
wife, in the event of her death without issue, of which he cannot be
deprived without his own consent.  *Lyon* v. *Knott*, 26 Miss. R.
561–2–3.

2d.  The existence of this right deprives the wife of the power of
disposition, and places her estate, to all intents and purposes, be-
yond her control;  because such disposition would be wholly incom-
patible with the rights vested in the husband, and would necessarily
defeat them.  *Garrett* v. *Dabney*, 27 Miss. R. 344–5–6.

It is true, the rights of the husband in the property of his wife
are not so extensive under the Act of 1846, as of 1839.  But the
rights remaining under the former act, are of such a character and
extent as to be inconsistent with the claim of a separate estate in

the wife, as set up, and altogether incompatible with the power of making a will, as claimed, without the consent of the husband; "for she could no more defeat a fixed and present right, existing to a limited extent, than one extending to the. entire estate." Ib. 345. We think, therefore, that no testamentary power exists under the first exception to the general rule.

The facts exclude the application of the second exception, as also the third.

But, it is insisted, that this court has. simply decided that a married woman can make a will, with the consent of her husband, without deciding that such power does not exist without such assent. This position is certainly negatived, by the words of the court, in *Lee* v. *Bennett*, viz.: "To give validity to a will so made, the husband must assent to the will after her death." 31 Miss. R. 126. But, should this position be at all tenable, it requires but a slight examination of the grounds on which the powers of the wife to make a will rest, to render it certain that no such capacity exists, under the case disclosed by this record.

The common law effect of marriage, precludes the idea of testamentary capacity in the wife. This power, as well as the subjects for its exercise, are alike destroyed by the marriage; and it is excluded, by express words, in the Statute of Wills: and hence the general rule. The exception, that such power exists with the consent of the husband, when examined, will be found not to be a power of the wife, as such, but simply the power of the husband, exercised by her as his appointee for that purpose, his consent having this effect, and being the only basis on which the power rests; for, when the subjects on which such power may be exercised, and to which it is limited, are examined, it will be found to be confined to such property only as the husband can himself dispose of, to wit, of her choses and her personal estate. Her land is excluded, for the simple reason that the fee in that is beyond the power of the husband.

The same right of disposition which his consent gives to her, could be given to any other person, and depends on the principle that, what a man can do himself, he may do by another.

So that, in reality, the woman makes no will at all, but only something like a will, operating in the nature of an appointment;

the execution of which, the husband, by his bond, agreement, or covenant, is bound to allow. 2 Blackstone's Com. 498. And a legatee, under such a will, is held to take the legacy as the gift of the husband. Wentworth on Executors, 365, note a; Ib. 367.

This view of her power to make a will, places this exception on the same grounds as each of the others, and renders all exceptions merely *apparant*, but really in harmony with the rule. Because a married woman, holding separate estate by settlement, with reference to such estate is a *feme sole*, she can make a will; for a *feme sole* can make a will.

A married woman, holding property in *autre droit*, may dispose of it by will, for she makes the will by virtue of no power in her as a married woman, but possesses the power, as she does the property, in *autre droit*.

So also a married woman may dispose, by will, of property in which her husband has an interest, by his consent; thereby deriving a power from him, having no existence but by his appointment. Thus, it will be seen, that a married woman has no testamentary capacity *per se*, but may become the recipient and agent for the exercise of such power, by the special appointment of others. She may derive it from the grantor of a deed of settlement, as an incident of the separate estate therein conveyed, or by virtue of the same power by which she holds property in *autre droit*, or by the consent of her husband; or, perhaps, she might become the agent for the exercise of such power by other modes; but, until the power elsewhere existing is conferred on her, she possesses it not; and, any attempt to exercise such power, is a nullity.

The power of making a will is given by law, and the persons having such power designated in the statute. A married woman, being expressly excluded by the statute, has not the power, unless it is otherwise shown to be conferred.

We think it has been shown that such power has not been conferred on Mrs. Bunkley, and consequently her attempt to exercise such power was properly held void, and the paper presented as a will refused probate.

The allegations of the petition, and the recitals of the will, set up an abandonment of the wife by the husband. For what purpose such allegations are made is not clearly apparent, unless a

new source of testamentary power is sought to be established under this head. Such abandonment could not enlarge the rights and powers of Mrs. Bunkley, unless its necessary effect was to dissolve the marriage, she ceasing to be his wife in consequence of such abandonment. For marriage subsists until dissolved, and all the rights, incidents, and powers arising from that relation, continue without increase or diminution, so long as that relation continues. The abandonment of either party of his or her duties, neither operates as a release of rights appertaining to either, nor an increase of power; nor is it one of the modes legally recognized of dissolving this relation. It is true, abandonment, if wilful and sufficiently long continued, may be a cause for a dissolution ; but it never can amount in itself to a dissolution of the marriage. This must be judicially declared before its consequences attach, and then only from the date of the decree, and not from the date of the cause of the divorce. Then it follows, notwithstanding the abandonment alleged, the' marriage continued in full force up to the death of Mrs. Bunkley. She, at the date of executing the paper presented as a will, was, and continued to be until her death, a married woman; and consequently, if a married woman, could not make a will without the consent of her husband. Under the circumstances disclosed in this record, she could not; and the decree below so holding, should be affirmed.

*George L. Potter*, on same side.

We dismiss from the case, at the outset, any considerations founded on the alleged desertion of "three months," set forth in the petition. That act created no forfeiture of the rights of the husband; nor did it enlarge the capacity of the wife. Clancy, Rights of Married Women, 66 to 70; *Marshall* v. *Rutton*, 8 Term. 545; 2 Kent, 155 to 160.

We also lay out of view the devise of lands, as there is no pretence to say the will is operative to that extent. If sustained at all, it must be as a disposal of personalty alone.

It will be noted that this alleged will bears date after, and is consequently governed by, the new code, so far as mere capacity to make it is involved; but her power to convey the estates embraced

in it, may depend on the rights of the husband under the Act of 1846.

The new code re-enacts the Statute of 1821, on the subject of wills. Code 432, Hutch. 649. It provides that every person of full age, being of sound and disposing mind, " and not a married woman," may make wills disposing of their estates, both real and personal.

The Act of 1821 declared the rule for the descent of lands " not devised," and the distribution of personalty " not bequeathed." Hutch: 623, § 50; 624, § 52; and it is adopted in the new code, 425, § 110; 453, § 111. Whether, therefore, this point depends on the woman's act of 1846, or the Code of 1857, the result is the same. The general law excepted married women out of the class of persons empowered to make wills of either real or personal estate; and the general law provided only for the descent of real, and the distribution of personal estates, " not devised," " not bequeathed." Keeping these facts in view, let us see what are the provisions of the woman's act of 1846, and the Code of 1857, for the disposition of the estates of married women, upon their decease. The Act of 1846 provides, that " if any married woman shall die seised and possessed of real estate or freehold," acquired under the Act of 1839, her husband shall be entitled to curtesy; " and if she die possessed of slaves, or other personal chattels, as her separate property," the same shall " descend" to the issue of her body, if any; and if she dies without issue, the same shall " vest in the surviving husband." The new code contains a similar provision, as to the rights of the husband in the realty of the wife, held under that act; and that if she dies possessed of slaves, or other personalty, the same shall " descend" to the husband and children, " in equal parts, according to the rules of descent;" and if there be no children, nor descendants of them, " then the husband shall inherit her personal property." Code 337, § 28.

We think this act is prospective, and that it cannot affect the rights of parties to a marriage, celebrated under the law of 1846. The first article of the new code on this subject, speaks of property owned by " any single woman," and declares it " shall continue" her separate property after the marriage, as it was before; and then speaks of property that " shall accrue" to her after

marriage.   Code, 335, § 23.   The 28th Art. p. 337, speaks of real estate " acquired or held under the provisions of this act," and the whole purport of the enactment, shows the intent to declare the rule as to future marriages and future acquisitions, in regard to the disposition of the property, although some clauses, relating to personal contracts, may have a more general application.   The Act of 1839, plainly related to property held or acquired under it.   The Act of 1846, refers to property held under the Act of 1839 (§ 2), and gives her the income of it; and enables the wife, owner of a plantation and slaves, to hold the necessary stock, &c., to carry on the place.   Up to the date of the new code, lands and slaves were acquired and held, by wives, under the Act of 1839; and plantation stock, &c., only under the Act of 1846; and the property so held or acquired continues subject to those acts; whilst property held or acquired, since the new code, comes under its provisions. We say the new code does not apply, and was not intended to apply, so as to affect the rights of either husband or wife to this property, acquired under a marriage in 1853, and under the Act of 1846.

It is a necessary consequence of the law, that the new code shall not be so applied, and impair vested rights.   In *Carter* v. *Carter*, it was held, that the Act of 1839 fixed the rights of the parties to property acquired under it, although the Act of 1846 was in force when the matter of controversy arose.   14 S. & M. 63.

So in *Knott* v. *Lyon*, where the marriage was in 1844, and the death in 1847.   4 Cush. 555–7.   But the point is not material here, as none of these statutes give a power to devise or bequeath. We refer to both acts, to call attention to the fact that, although they declare the disposition of the property, after the death of the wife, as the general law provided for descent and distribution, they both show an omission of the words "not devised," "not bequeathed."   That is to say, the general law recognizes that there may, in the classes of cases it covers, be wills made, which shall interfere with the course of descent and distribution, and hence, the rules of descent and distribution are restricted to cases where there is no valid disposition by will.   But we find no such provision, no restriction of the clause to property "not devised," "not bequeathed," when we read the rules providing for the dis-

posal of estates of deceased wives. On the contrary, the law declares positively, who shall own her estate at her death; and there are no *ifs* or *provisos*. The whole legislation, on this subject, proceeds upon the supposition, that married women, being excepted out of the Statute of Wills, cannot make any such disposition of their property. Look to the positive words of the Act of 1846, under which this marriage was had. It declares, that, if the wife shall die without issue surviving her, "the same slaves and other personal property, shall vest in the surviving husband." It makes no provision for the contingency of a will; does not admit the possibility that the wife can make one; but declares, in the very case, like that before the court, where the wife leaves surviving her "no children, nor descendants of children," that all her personalty, upon the instant of her death, "shall vest" in her husband. This provision is a virtual denial of her capacity to bequeath such property, and there is neither pretence to insert, nor authority in this court to incorporate, a proviso, declaring that the contingency of a will shall defeat the rights of the husband as survivor, thus specially secured and declared by the statute.

If authority be required, on this point, we have it in *Knott* v. *Lyon*, where the Chief Justice thus declared the right of the surviving husband: "It cannot be doubted that, by virtue of the marriage, under the act, he acquires a right in reference to the slaves, which is of a fixed and definite character, and of which he cannot be deprived without his own consent." "They vest in him, under the law, and by virtue of the marriage." 4 Cush. 561-2. "The interest with which Lyon was vested, by the marriage, was not the absolute and unqualified title to the property, but only the usufruct for life, with a right to it in fee, in case Mrs. Lyon should die, having no issue of the marriage, &c." Ib. 564. The opinion holds that the act gave certain rights to the wife, in her personalty, and, to that extent, only, restricted the common law rights of the husband. Ib. 560-1.

Tested by this decision, this case is plain. What is the rule it declares upon the Act of 1839? The wife retains title, for life, with usufruct to the husband during the marriage, and a right of survivorship to her; but if she dies first, the issue of the marriage take; and in default of issue, the husband. A joint power of sale

was also given. Such is the extent of her interest, carried out, by the Act of 1839, from the common law estate of the husband. The Act of 1846 extends her rights, as to the use and income of the estate; allows them to contract, jointly, for the hire, clothing, and support of the slaves, and the employment of an overseer. Both, and each, may contract for supplies, and thus charge the income; and, as to this, the wife may charge the husband. She may also hold plantation stock, &c.; and her children by a former marriage, are let in, upon her decease. But, except with regard to the income, and plantation stock, &c., the Act of 1846 does not enlarge her power to hold, and the case of *Knott* v. *Lyon* applies.

The case of *Garrett* v. *Dabney*, 5 Cush. 343, also applies. It was there insisted that the wife, as to her separate property, had the *jus disponendi*, and might ·dispose of her estate, by will, or otherwise, and the English cases were cited. The court replied: " This class of cases goes upon the principle of absolute exclusion of all interest, on the part of the husband, in the separate estate, and regards the wife as vested with the powers of a *feme sole*," " and hence is deduced to her the power to make a will." " But the estate of a *feme covert*, held under the Act of 1839, is, in important respects, in a different condition from .the separate estate of a married woman in England." Certain differences are stated, and the court proceeds (p. 345): " Where the separate estate is founded upon our statute, she is regarded as a *feme sole*, in relation to it, only so far as she is clothed with such rights by the statute; and among other things, that her right of disposition is confined in its exercise to the particular mode therein specified." " Under our law, the husband has a present, fixed interest in, and right of enjoyment of the estate, with a vested interest in remainder, in fee, in case of the wife's death, without issue of the marriage; and if there should be children of the marriage, they have a vested interest in fee, to take place upon her death. These rights vest in the husband and children, immediately upon the marriage, as essentially as though they had been expressly secured by marriage settlement. They could not be defeated by any act of the wife." Of course, she cannot defeat them by a will.

It may not be amiss to refer to΄other decisions upon the statute. In *Davis* v. *Foy*, 7 S. & M. 67, it was said, the Act of 1839 " has

not the effect to extend her power of contracting, or of binding herself or property. Its effect is rather to take away all power of subjecting her property to her contracts, except in the particular mode specified in the statute."

*Frost* v. *Doyle*, 7 S. & M. 68, was a bill to charge the estate of the wife, held under the Act of 1839, with her note. C. J. Sharkey, referring to the act, said (p. 74): "From its title, it would seem that something more was intended, than to secure merely a separate ownership, and its provisions seem to have been framed with the view of restraining the wife from conveying or disposing of her property in the usual modes of transfer. It secures the property owned before coverture, or afterwards acquired, to the separate use of the wife, subject to the control of the husband, who is also entitled to the profits." " The mode of transfer is not only pointed out, but there is a prohibition as to any other mode of conveyance."

In *Berry* v. *Bland*, 7 S. & M. 83, it is said: "The statute directs the particular mode in which a *feme covert* may alienate her separate property, and provides that it shall not be done otherwise."

*Doty* v. *Mitchell*, 9 S. &. M. 435, was a bill to charge the separate estate of the wife. The court said, she is "restricted to the particular mode or manner pointed out by the instrument conferring the estate." Same, *Montgomery* v. *Agricultural Bank*, 10 S. & M. 566.

In *Curll* v. *Compton*, 14 S. & M. 58, it was said: "We have often held that a wife cannot sell or charge her separate property, except it be done in strict compliance with the law. It is by virtue of the act alone that she holds it; and, as the act only authorizes her to dispose of it in a particular way, no other way will do." "The husband has an interest in it, and the law protects his interest, by making it necessary for him to join in the conveyance."

In *Selph* v. *Howland*, 1 Cush. 268, C. J. Smith said: "The position contended for is, that the contracts of a *feme covert*, in respect to her separate estate, may be enforced," &c. "This position, as applied to the case at bar, is based upon another assumption, which is, that, according to the doctrine of this court, a married woman is, as to her separate property, in all respects a *feme*

*sole.* The reverse of this doctrine is recognized in *Doty* v. *Mitchell.* It is there held that a married woman, in respect to her separate estate, is a *feme sole,* only so far as she is constituted such by the instrument creating the estate; that she is restricted to the precise mode or manner prescribed by the instrument under which she holds." "The statute designates the particular mode in which a married woman may alienate her separate property. These directions define and limit the powers of *femes covert* in regard to their separate estates."

In *Dalton* v. *Murphy,* 1 Geo. 65, it is said, she can "only contract in the mode prescribed by the statute."

These cases seem to declare that, as to her separate estate, the wife can do only such acts as she is specially empowered to perform by the statute, or instrument, under which she holds.

It is said, notwithstanding all this, that a different rule was declared in *Lee* v. *Bennett.* We say it decides against this will. It has recognized the doctrine, that the wife may, with the assent of the husband, bequeath what the law would give to him, in case he survived her. That is, she may, with his consent, dispose, by will, of his residuary interest in her personalty. But the very fact, that it requires the consent of the husband, to validate the will, shows what sort of instrument such will is considered to be,—one deriving its whole efficacy from the sanction of the husband; and that, if made without his sanction, it is null.

If we look to the condition of Mrs. Bunkley, when she made this will—about to die without issue—and consider that she acquired this personalty "by distribution," under the Act of 1846, we at once see she had no interest in it to bestow by will. Hers was a limited interest, reserved to her by statute—a fixed use for life, with right of survivorship; but, in case of her death without issue, the law vested the whole estate in the husband. The contingency on which alone she could have an absolute, full property, with power of disposal, is defeated by her death.

The doctrine, that a wife may dispose of her personalty, as if single, is the creation of courts of equity, and repugnant to the common law. It never has been recognized, even in equity, with regard to her real estate. Clancy, 282.

Here was a case where the law recognized her as owner; and, if

there be force in the argument that, capacity to own, must of necessity include the capacity to convey, it would long since have been declared that a wife might, as a *feme sole*, dispose of her real estate. But, if we go to courts of equity, we find that her individuality is recognized; and, as to her separate personal estate, she is regarded as a *feme sole*.  Note the particulars.   Her estate is an equitable, and not a legal, estate; and she deals with it not as a wife, but as if single,—so a court of equity regards her as to such estate, and recognizes her capacity to act accordingly.   It declares her capacity not only to bequeath such estate, but also her power, during all the marriage, to act with regard to it independent of her husband, and as if the marriage had been dissolved, or had never existed.

This whole doctrine is founded upon two propositions,—an equitable ownership, by the wife, of personal property, independent of the control of the husband; and second, the assumption, that the *jus disponendi* was incident to such ownership.

But, if we consider the powers of the wife, under the Act of 1846, we find her position the same as in other cases, where she is legal owner of property.   She is not divested of her character as wife, nor empowered to convey without her husband.

Under the equity rule, she could, at all times during the marriage, sell and convey without the assent of her husband; under the statute, she can do so only by the joint deed of herself and husband.   Under the equity rule, she, as equitable owner, has the right to sell and convey; and this right of disposition was held to include the power to bequeath; but, under the statute, no separate right of disposal exists.

There is a marked difference between the rule of the statute, and the rule in equity, relative to the separate estate of married women. Under the statute, the woman retains her character of wife; in equity, she is regarded, as to such estate, as if *sole*.   Under the statute, her estate may be a legal interest; under the rule in chancery, it is always equitable.   Under the statute, she has no separate power of disposal at any time during the marriage; in equity, she has such power, if not specially restricted.   Under the statute, the income only of her property can be subjected to pay certain contracts for the benefit of her estate; in equity, she is free to

charge both estate and income. Under the statute, she can make no separate contract, either for the sale or hire of her slaves, or for the employment of an overseer; and contracts for supplies may be made by husband or wife, and are binding on both. In equity, she acts independent of her husband, and may contract for any and every purpose, and no contract of the husband can affect her separate interests. In equity, by her separate act, she may defeat her husband's rights of survivorship; under the statute, she cannot. In equity, it is held, she has an unrestricted power of disposal, and may therefore bequeath away such estate from her husband; under the statute, she has no power of separate disposal at all, during all the marriage, and cannot defeat his rights as survivor. Where, then, is her power to make a will?

Under the statute, she is still regarded as under disability of coverture; in equity, she is free. How, then, can it be said that she has capacity to act in the one case, simply because she has in the other? In equity, the power of disposal exists as an incident to the right of property; whereas the statute expressly excludes any such conclusion.

In *Hulme* v. *Tenant*, 1 Brown Chan. 16, Lord Thurlow said: " The rule laid down in *Peacock* v. *Monk*, 2 Ves. 190, that a *feme covert*, acting with respect to her separate property, is competent to act in all respects as a *feme sole*, is the proper rule, and necessary to support the decisions on this subject." In *Fettiplace* v. *Gorges*, 1 Ves. 46, it was held, that she took personal property settled to her separate use, with all its incidents, and that therefore she had the *jus disponendi*, and might dispose of it by will, or otherwise. Contrast these fundamental propositions, on which the equity rule is founded, with the statute. Under the equity rule, she is regarded as if sole, and this is "necessary to support the decisions on the subject;" whilst the statute regards her as still under the disabilities of coverture. The equity rule recognizes her separate capacity; the statute does not. The equity rule admits her separate right of disposal; the statute denies it. As she has neither a separate capacity to act, nor a separate right of disposal, it follows, as of course, that she cannot bequeath.

In *Murray* v. *Barlee*, 3 Mylne & Keene, 223, the chancellor said: " In all these cases, I take the foundation of the doctrine to

be this : the wife has a separate estate, subject to her own control, and exempt from all other interference or authority. If she cannot affect it, no one can ; and the very object of the settlement, which vests it in her exclusively, is to enable her to deal with it as if she were discovert." Can any judge apply such language as a correct exposition of our statute ?

But, even in equity, the *jus disponendi* may be prohibited or restricted by the terms of settlement.

In *Tullett* v. *Armstrong,* 1 Beav. 1, it is said : " If the gift be made for her sole and separate use, without more, she has, during the coverture, an alienable estate independent of her husband."

" If the gift be made to her sole and separate use, without the power to alienate, she has, during coverture, the present enjoyment of an unalienable estate, independent of her husband." Same case on appeal, 4 Mylne & Cr. 405 ; *Pybus* v. *Smith,* 3 Brown Ch. 347 ; *Parkes* v. *White,* 11 Ves. 221 ; *Jackson* v. *Hobhouse,* 2 Meriv. 487.

And if our Statute of 1846 constituted a deed of settlement, courts of equity would hold that a restraint on the power of alienation was necessarily implied, from the restrictions on her right to charge even the income, and that the wife had no power of disposal at all, except by the joint deed of herself and husband, as therein specially allowed. See cases cited in Hare & Wallace's Leading Cases in Equity, vol. 1, pp. 404, 405 ; and for the general doctrine here discussed, see same, beginning at p. 394.

We have seen that, in England, the wife has, in such cases, a power of disposal, as incident to her rights of property, if not restricted by the settlement ; but such is not the rule here. In this State, even under a deed of settlement, a wife has such power only over the estate, as the deed expressly confers upon her ; and that power is to be strictly construed, and the wife restricted to the particular mode therein prescribed. *Doty* v. *Mitchell,* 9 S. & M. 447 ; *Montgomery* v. *Agricultural Bank,* 10 Ib. 576 ; *Reid* v. *Lamar,* 1 Strobh. Eq. 37 ; *Methodist Church* v. *Jaques,* 3 John. Ch. 78 ; *Thomas* v. *Folwell,* 2 Whart. 16 ; 4 Yerg. 375 ; 8 Humph. 159 ; 8 Leigh. 27.

It is true, the cases cited from New York and Virginia have been overruled in those States, but they furnish an unanswerable argument upon our statute.

As we have seen, this court has repudiated the English equity rule with regard to the power of a wife over her separate estate. It has also restricted the wife, holding under the statute, to the powers given by the act. "Except to the extent that the power has been given by this statute, to make contracts, she has no more power than she had at common law." *Robertson* v. *Bruner*, 2 Cush. 244.

How, then, stands the case? At common law, the being of the wife was merged in the husband—she could make no will. When courts of equity recognized her right to enjoy a separate personal estate, they refused to regard her as wife, and declared her, as to such estate, a *feme sole*. That being equitable owner, and sole, she had the absolute right of disposal, except so far as expressly limited by the settlement; and that, therefore, she might dispose of it by deed or will. Afterward, those courts, seeing that the purposes of such settlements were thus often defeated, adopted a counter policy, and favored restrictions on the power of alienation. And the courts of this and other American States, regarding the real purpose of such settlements, held that the wife could dispose of her estate only in such manner as she was expressly authorized by the terms of the deed. She could make no will, if the deed gave no express authority for that purpose. And this court has adopted the same wise rule in construing the Statute of 1846.

There is a further and conclusive reason against this alleged will. The right to make wills in this State is derived from the statute, which regulates wills of both real and personal estate. It is said the courts of Virginia have decided otherwise, on a similar statute. But there is this material difference between the two laws. Our statute contains the words, "goods and chattels, and personal estate of every description whatever," which are not in the Virginia act. Hutch. 649; Virginia Code, vol. 1, p. 375.

The New York courts admit that the exception of married women, in their statute, excluded them; but hold they may make wills, under a special clause as to powers. 10 Barb. 604.

It is to be noted, also, that the wills of wives are not, in England, regarded as wills proper, but as testamentary acts. The ecclesiastical courts do not execute them, but a sort of administration is had in chancery. Formal probate is, indeed, had in the ecclesiastical

court, which decides upon the question of testamentary act, and then the paper is re-proved and enforced in chancery.  *Rich ˙·. Cockell,* 9 Ves. 375, 376.

It is in the nature of a bequest of equitable interests, to be administered in a court of equity, and is elsewhere wholly inoperative. It seems strange to   v that a mere rule in equity, adopted for such estates, is to goveı ̱, in contravention of the statute, cases of statutory legal estates, over which the Court of Chancery has, generally, no power of administration.

Let the equity rule as to these *quasi* testaments stand, as regards bequests under powers in deeds of settlement, and the like; and the Statute of Wills govern in other cases.

We conclude that this will is inoperative, so far as it depends upon the powers of a wife under the statute; and that, inasmuch as the petitioners failed to show any authority, by deed of settlement or otherwise, to sustain this attempt of the wife to make a will, the court was right in dismissing the petition.

HANDY, J., delivered the opinion of the court.

This was a petition, in the Court of Probates, to admit to probate the last will and testament of Amanda A. Bunkley, and stating the following facts : that the testatrix was married to the appellee, in this State, in the year 1853, and became the owner of real and personal estate, as her separate estate, by distribution and possession obtained after the marriage ; that for some time previous, and at the time of her death, she was living separate and apart from her husband, who had abandoned her for the space of three months before her death, refusing to see her and neglecting to perform any of the duties of a husband, even in her last illness ; that she executed the instrument, propounded as a will, which bears date in December, 1857, and is attested by witnesses, according to law, and thereby disposed of all her property, and afterwards died, leaving no children or descendants ; the petitioners were named as executors, and none of the property was left to the husband.   The husband appeared and demurred to the petition, and the demurrer was sustained, the petition dismissed, and this appeal taken.

Two questions are presented in the case.

1. Whether a married woman can dispose of her separate pro-

perty, acquired since the passage of the Act of 1846, and held under the provisions of that act, by will, without the consent of her husband, who survives her.

2. Whether the alleged abandonment by the husband, in this case, did not render his consent to the will unnecessary, and debar him of all interest in the property.

In support of the affirmative of the first proposition, it is insisted that a *feme covert*, having property under our married woman's law, has the same power over it, as a *feme covert* had in England over property held by her to her sole and separate use, and as to such property, that she is to be regarded as a *feme sole*, and therefore not under the disability of a married woman to make a will, mentioned in the Statute of Wills.

This question has been the subject of consideration repeatedly, in this court; and it is now firmly settled that a married woman, having a separate estate under our statutes, is not clothed with the rights of a *feme covert* in England, having property to her sole and separate use, but is a *feme sole*, with regard to the property, only so far as she is invested with power over it by the provisions of the statutes; that she cannot charge it by her contracts; that she can sell, mortgage, or convey it, only in the mode pointed out in the statutes; that she can dispose of it only in the way authorized by the statutes; that the statutes define and limit her powers in regard to the estate. *Davis* v. *Foy*, 7 S. & M. 67; *Frost* v. *Doyle*, Ib. 68; *Berry* v. *Bland*, Ib. 83; *Doty* v. *Mitchell*, 9 S. & M. 435; *Curll* v. *Compton*, 14 S. & M. 58; *Selph* v. *Howland*, 23 Miss. 268; *Garrett* v. *Dabney*, 27 Miss. 344. It is further held that the separate estate of the wife, is only so much carved out of the rights of the husband arising from the marriage: *Knott* v. *Lyon*, 26 Miss. 548; *Cameron* v. *Cameron*, 29 Miss. 120; from which it is plain that the entire and absolute estate is not in her. These cases, and many others, in which the same principles have been recognized, show that a married woman, holding property in virtue of our statutes, has a very different estate in it from what a *feme covert* in England had in property held to her sole and separate use, where she had the absolute power of disposing of it in any manner she thought proper, of contracting in relation to it, and of charging it for her separate debts; where, in short, she stood, in regard to

VOL. VI.—10

it, in the position of a *feme sole* to all intents and purposes.   And her want of that absolute power over it, necessary to her right of disposition of it by will, is thus fully established.

It has also been distinctly held, that the husband acquires, by the marriage and under the statute, a fixed and definite right, which vested in him; of which he could not be deprived without his consent, and which is entirely repugnant to the absolute right of disposition in the wife.   *Lyon* v. *Knott, Garrett* v. *Dabney, Curll* v. *Compton.*

Whether, therefore, the question be regarded with reference to the *power of the wife* to act as a *feme sole*, with regard to the property : to bind it by her contracts : to sell it, or to charge it in any manner, as a *feme sole :* or with reference to the *right and interest of the husband* in it: her power over it is essentially different from that of a *feme covert* holding property to her sole and separate use in England.   And it follows, that she cannot be regarded as a *feme sole*, in regard to such property, and is, therefore, incapable of disposing of it by will.

The only exception to this rule, is that contained in the case of *Lee* v. *Bennett*, 31 Miss. 119, in which it is held that a married woman, having an estate under our statutes, may dispose of it by a will, made with the consent of the husband.   But that case does not sanction the will under consideration ; for it is admitted that this will was made without the consent of the husband.

The question, therefore, under consideration, must be resolved in the negative.

2. It is clear that the alleged abandonment, under the circumstances set forth in the petition, would not be sufficient to constitute the wife a *feme sole*, and to invest her with the rights and privileges incident to that character.   2 Kent's Comm. 155, *et seq.*

Nor is there any reason for the position which is assumed in behalf of the appellants, that the husband, by the alleged abandonment, had forfeited his interest previously existing in the property. The cases of *Cecil* v. *Juxon*, 1 Atkyns, 278, and *Starrett* v. *Wynn*, 17 Serg. & Rawle 130, are cases where the husband, who had deserted his wife for a long time, was held not to be entitled to property which she had acquired by her own industry during the period of his abandonment.   But the principle upon which that rule is

founded has no application to the right of the husband in property acquired before the separation, and the cases cited are not authority for the position taken in behalf of the appellants, that the husband lost all interest in the property, which he had previously acquired, by his desertion of his wife.

We think that the judgment is correct, and it must be affirmed.