Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/29/2021 01:08 AM CDT

James Chambers, Personal Representative of the
Estate of David L. Chambers, appellee,
v. Angie Bringenberg, appellant.

___ N.W.2d ___

Filed August 6, 2021.    No. S-20-593.

1. **Summary Judgment: Appeal and Error.** Summary judgment is proper
when the pleadings and evidence admitted at the hearing disclose no
genuine issue regarding any material fact or the ultimate inferences that
may be drawn from those facts and that the moving party is entitled
to judgment as a matter of law. In reviewing a summary judgment, an
appellate court views the evidence in the light most favorable to the
party against whom the judgment is granted and gives such party the
benefit of all reasonable inferences deducible from the evidence.

2. **Statutes: Appeal and Error.** To the extent an appeal calls for statutory
interpretation or presents questions of law, an appellate court must reach
an independent conclusion irrespective of the determination made by the
court below.

3. **Statutes: Intent.** When interpreting a statute, the starting point and
focus of the inquiry is the meaning of the statutory language, understood
in context.

4. **Statutes.** It is not within the province of the courts to read a meaning
into a statute that is not there or to read anything direct and plain out of
a statute.

5. **Statutes: Appeal and Error.** Statutory language is to be given its plain
and ordinary meaning, and an appellate court will not resort to inter-
pretation to ascertain the meaning of statutory words which are plain,
direct, and unambiguous.

6. **Decedents' Estates: Deeds: Homesteads.** Transfer-on-death deeds
are not subject to the requirements of Neb. Rev. Stat. § 40-104
(Reissue 2016).

7. **Decedents' Estates: Deeds.** The Nebraska Uniform Real Property
Transfer on Death Act allows, through a transfer-on-death deed, for the
nonprobate transfer of real estate after the death of the transferor.

8. **Decedents' Estates: Deeds: Wills.** Under transfer-on-death deeds, property changes hands after death through the nonprobate means of asset-specific will substitutes, sometimes called nonprobate wills.

9. **Decedents' Estates: Wills: Property.** Nonprobate wills are designed to provide an avenue for transferring property after death that is less expensive and time consuming than probate court proceedings.

10. **Decedents' Estates: Deeds.** A transfer of real property through a transfer-on-death deed is effective at the transferor's death and at all times until then is fully revocable.

11. **Decedents' Estates: Deeds: Words and Phrases.** A "designated beneficiary" of a transfer-on-death deed is the person designated to receive property in a transfer-on-death deed, while the "beneficiary" is a person who actually receives property under a transfer-on-death deed.

12. **Decedents' Estates: Deeds: Taxes.** The property transferred after death via a transfer-on-death deed is subject to inheritance taxes.

13. **Decedents' Estates: Deeds.** During a transferor's life, a transfer-on-death deed does not affect any interest of the transferor, transferee, or third parties.

14. **Decedents' Estates: Deeds: Intent.** The provision of Neb. Rev. Stat. § 76-3407 (Reissue 2018) that a transfer-on-death deed is nontestamentary was intended to clarify that the transfer-on-death deed does not have to be executed with the formalities of a will and does not need to be probated.

15. **Decedents' Estates: Deeds.** Neb. Rev. Stat. § 76-3407 (Reissue 2018) does not change the fundamental feature of a transfer-on-death deed that it does not operate until the transferor's death.

16. ____: ____. A transfer-on-death deed is not an inter vivos grant.

17. **Decedents' Estates: Deeds: Statutes.** A transfer-on-death deed is a term of art that has no common-law background; it is authorized by statute.

18. **Decedents' Estates: Deeds.** Transfer-on-death deeds are inherently quitclaim deeds, with the important distinction that they take effect only upon the transferor's death and pass only whatever interest the decedent had in the property at death.

19. ____: ____. On the death of the transferor, the beneficiary to the property subject to the transfer-on-death deed takes the property subject to all conveyances, encumbrances, assignments, contracts, mortgages, liens, and other interests to which the property is subject at the transferor's death.

20. **Decedents' Estates: Liability.** If other assets of the transferor's estate are insufficient to pay all claims against it, as well as statutory allowances to the transferor's surviving spouse and children, and the expenses of administration, then the beneficiary is subject to personal liability

to the extent needed to pay all claims against the transferor's estate, statutory allowances to the transferor's surviving spouse and children, and the expenses of administration.

21. **Decedents' Estates: Deeds.** Any property subject to a transfer-on-death deed is includable in the calculation of the augmented estate under Neb. Rev. Stat. § 30-2314 (Reissue 2016).

22. **Decedents' Estates: Deeds: Liability.** A beneficiary who receives property through a transfer-on-death deed is liable to account to the personal representative of the transferor's estate for a proportionate share of the fair market value of the equity in the interest the beneficiary received to the extent necessary to discharge the claims and allowances remaining unpaid after application of the transferor's estate.

23. **Decedents' Estates: Accounting: Time.** A proceeding to account must be commenced within 1 year after the death of the transferor and may not be commenced unless the personal representative has received a written demand by the surviving spouse, a creditor, a child, or a person acting for a child of the transferor to do so.

24. **Decedents' Estates: Deeds: Time.** The transfer-on-death deed must be recorded within 30 days after being executed, but this recording creates no ownership rights or rights of priority against subsequent creditors or other claimants to the property that is the subject of the transfer-on-death deed.

25. **Homesteads: Legislature: Intent.** The purpose of the Legislature in enacting the homestead statutes was to protect the debtor and the debtor's family residing in a home from the forced sale of the home on execution or attachment.

26. **Homesteads.** The requisite occupancy is the most important factor in determining whether property is the homestead, because this is the test established by the homestead statutes.

27. ____. A homestead is not dependent upon ownership, and it does not create ownership interests.

28. ____. Any interest in real estate, either legal or equitable, that gives a present right of occupancy or possession, followed by exclusive occupancy, is sufficient to support a homestead right therein.

29. ____. There are exceptions to the requirement of actual occupancy to establish a homestead only where either (1) a property occupied as a homestead has been temporarily vacated without abandonment, and with a bona fide and subsisting intention to return, or (2) the claimant with the claimant's family have the bona fide present intention of making the property the homestead, some intervening obstruction prevents immediate actual possession, the claimant clearly manifests the intention of making the property the homestead to put others on notice, and the family occupies the land as circumstances reasonably permit.

30. **Homesteads: Sales: Time.** While the amount of the proceeds from the sale of a homestead are protected for a period of 6 months from a sale executed and acknowledged by both spouses, and may be reinvested into a new homestead, real estate purchased with the sale of a homestead does not become the new homestead unless the requisite occupancy, actual or constructive, is present.

31. **Homesteads.** Because the object of the homestead legislation is to conserve the family by keeping a roof over it, the homestead, at least so long as the family continues to reside there and to the extent it cannot be separated without depriving the family of its actual home, is something more than the present worth of the exemption the homestead statutes allow.

32. \_\_\_\_. Neb. Rev. Stat. § 40-104 (Reissue 2016) was designed to accomplish the goal of keeping a roof over the family by preventing the possibility of the indivisible family home being unilaterally conveyed or encumbered by fraud, thereby interfering with the family's rights to occupancy.

33. **Homesteads: Deeds.** An inter vivos deed conveying nonhomestead property is valid between the parties despite the lack of proper acknowledgment.

34. **Homesteads.** The conveyance of the family homestead away from the family during the conveyor spouse's lifetime without both spouses' execution and acknowledgment is invalid.

35. \_\_\_\_. The statutory provision requiring that the conveyance of a homestead be executed by both husband and wife applies to a homestead in which both have a homestead interest and cannot be relied on by a spouse who lacks the requisite occupancy to invalidate the occupying spouse's unilateral encumbrance or conveyance of real estate.

36. **Homesteads: Wills: Title.** A spouse's unilateral devise of that spouse's title to the homestead real estate via a last will and testament is valid, albeit subject to the homestead allowance and the surviving spouse's statutory life estate, when that was in effect.

37. **Homesteads.** Homestead statutes do not prohibit testamentary disposition of the homestead premises by the owner, although sometimes the surviving spouse and children are given certain rights in the land.

38. **Homesteads: Title.** A spouse with title to property, in whole or in part, does not, by permitting the property to be occupied as the family homestead, give up the right that spouse would otherwise have to devise that spouse's ownership interest.

39. **Decedents' Estates: Deeds: Homesteads.** What occurs upon a transferor's death to property that is the subject of a transfer-on-death deed is not a conveyance or an encumbrance, but a devise; a transfer-on-death

deed thus does not fall under the plain language of Neb. Rev. Stat. § 40-104 (Reissue 2016).

40. **Statutes.** When reading a statute, what it does not say is often as important as what it does say.

41. ____. Silence can be a meaningful indicator of statutory meaning.

42. **Statutes: Legislature: Presumptions.** In determining the meaning of a statute, the applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of the preexisting legislation.

43. **Decedents' Estates: Deeds: Homesteads: Legislature: Intent.** It is presumed that the Legislature knowingly did not provide that both spouses must, under Neb. Rev. Stat. § 40-104 (Reissue 2016), execute and acknowledge a transfer-on-death deed pertaining to homestead property in order for it to be valid.

44. **Decedents' Estates: Deeds: Homesteads: Wills: Intent.** Neb. Rev. Stat. § 40-104 (Reissue 2016) was never meant to apply to a transfer-on-death deed, a term of art for a nonprobate will authorized by the Nebraska Uniform Real Property Transfer on Death Act, which has no common-law background and did not exist when § 40-104 was adopted.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Reversed and remanded with directions.

Brian S. Koerwitz, of Endacott, Peetz, Timmer & Koerwitz, P.C., L.L.O., for appellant.

J.L. Spray, Christina L. Usher, and Andrew R. Spader, of Mattson Ricketts Law Firm, for appellee.

MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FREUDENBERG, J.

NATURE OF CASE

The district court on summary judgment invalidated a transfer-on-death (TOD) deed executed by the wife before her death naming her daughter as the designated beneficiary to her interest in a house titled solely in the wife's name. The court reasoned that the TOD deed was void because the husband did not execute and acknowledge the TOD deed, as set forth in a homestead statute, Neb. Rev. Stat. § 40-104 (Reissue

2016). Section 40-104 provides that the "homestead of a married person" cannot be "conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both spouses." The court quieted title of the house in the wife's estate, thereby requiring it to go through probate rather than allowing the wife's interest therein to be transferred outside of probate pursuant to the Nebraska Uniform Real Property Transfer on Death Act (TODA).[1] It also dismissed the daughter's counterclaim for slander of title. The daughter appeals.

## BACKGROUND

David L. Chambers commenced the underlying action with a complaint to quiet title against Angie Bringenberg, in which he also asked for injunctive relief. During the course of the proceedings in district court, David died and his action was continued on his estate's behalf by his son, James Chambers, as the personal representative. The subject real property is a house in Village Meadows (Meadows house), in Lincoln, Nebraska. David was the surviving spouse of Eleanor Chambers, who died on March 3, 2018. David and Eleanor married in 1995. Bringenberg is Eleanor's daughter. David was her stepfather. Eleanor was James' stepmother.

### Premarital Agreement

At the time of their marriage, David and Eleanor entered into a premarital agreement that was drafted by David. The agreement made reference to David's separate property consisting of a house and 80 acres and Eleanor's separate property as 76 acres in "Fillmore Co." The premarital agreement, however, is ultimately not relevant to our disposition of this appeal, and we need not set it forth here in further detail.

### Properties

In 2003, David and Eleanor, as husband and wife, jointly purchased a house on Wildfire Circle in Lincoln (Wildfire

---

[1] Neb. Rev. Stat. §§ 76-3401 to 76-3423 (Reissue 2018).

house). They also jointly owned a house in Arizona during their marriage.

In early 2017, David's health deteriorated. He moved into a skilled nursing care facility and later into an assisted living facility.

Sometime after 2017, the Arizona property was sold. Up until his death, David owned a house solely in his own name, which was located on a farm on Adams Street in Lincoln (the farmhouse). The farmhouse and surrounding land appears to be the same property described in the premarital agreement as David's sole property.

At some point, Eleanor inherited the land in Fillmore County, Nebraska, referred to in the premarital agreement as "Fillmore Co.," which she had held a life estate in. That land was subsequently sold by Eleanor for a substantial sum, apparently in 2012.

In June 2017, Eleanor purchased the Meadows house solely in her name. Eleanor resided in the Meadows house thereafter until her death. David never resided in the Meadows house and stated he never intended to do so.

Shortly after Eleanor acquired the Meadows house, David and Eleanor jointly executed a sale, in August 2017, of the Wildfire house.

## TOD Deed

Prior to a scheduled surgery, on February 8, 2018, Eleanor recorded a TOD deed for the Meadows house, naming Bringenberg as the designated beneficiary. David did not execute or acknowledge the TOD deed. Eleanor died on March 3. On March 13, Bringenberg recorded Eleanor's death certificate and transferred the Meadows house to her name.

## Disputed Allegations of David's Complaint

David alleged in his complaint to quiet title and for injunctive relief that Eleanor told him the Meadows house was

replacing the Wildfire house as the marital home and would be titled in joint tenancy with right of survivorship. Bringenberg denied that allegation. David alleged in his complaint that the Meadows house was purchased with marital funds; Bringenberg also denied that allegation.

David generally alleged that he was the rightful owner of the Meadows house and that a cloud had been cast upon the title. David asserted he was the rightful owner of the Meadows house due to (1) the fact that marital funds were used for its purchase, (2) David's belief the property was held in joint tenancy, and (3) the invalidity of the TOD deed because "Nebraska deeds conveying an interest in real property held by a married person must be executed by both spouses."

David sought a judgment (1) quieting title to the Meadows house in his name in fee simple absolute as against Bringenberg and (2) enjoining Bringenberg from forever asserting any claims of interest in the real estate or any portion thereof. David also asked for attorney fees and any other relief the court found to be just and equitable.

## BRINGENBERG'S ANSWER
### AND COUNTERCLAIM

Bringenberg generally denied that David was the rightful owner of the Meadows house and alleged that David's complaint failed to state a claim and was barred under the doctrines of waiver, abandonment, estoppel, res judicata, election of remedies, and unclean hands. Bringenberg alleged that the proper action to assert David's claim was through filing a petition for an elective share for the augmented estate, which had been filed in the matter of the "Estate of Eleanor A. Chambers, in the County Court of Lancaster County, Case No. PR18-319." Further, Bringenberg alleged David's claim against the Meadows house violated the prenuptial agreement.

Bringenberg sought attorney fees for what she alleged was a frivolous lawsuit. She counterclaimed for slander of her title in relation to David's filing with the county register of deeds

a notice of lis pendens against the Meadows house, which cloud on her title allegedly was filed in reckless or wanton disregard of her rights and with no legal justification. Bringenberg sought damages sustained as a result of the complaint, an order that any notice be stricken from the property records of the register of deeds, prejudgment and postjudgment interest as allowed by law, attorney fees and costs, and such other relief as the court deemed proper.

### David's Motion for Partial Summary Judgment and Hearing

David moved for "partial" summary judgment on the grounds that there was no genuine issue that the TOD deed was invalid, because David did not execute or acknowledge the deed; therefore, the deed did not effectuate a transfer of title to Bringenberg upon Eleanor's death. David asserted that Nebraska law required deeds of married persons to be executed and acknowledged by both spouses, especially deeds conveying a homestead interest.

David argued at the hearing that the court was being asked to decide the "narrow question whether a [TOD] Deed is subject to the Homestead Rule from Nebraska Revised Statute 40-104 which requires both spouses sign a deed transferring the homestead of a married person." He stated that the question was whether the TOD deed was "void and therefore title should be quieted back to the Estate of Eleanor." He claimed it was undisputed that the Meadows house was Eleanor's "homestead." Thus, David did not ask the court to decide on summary judgment if he had equitable title in the Meadows house due to the fact that marital funds were allegedly used to purchase it. David did not challenge the conveyance of the Wildfire house, the deed for which both David and Eleanor executed and acknowledged.

Bringenberg responded that it was disputed that the Meadows house was the homestead for purposes of § 40-104. David did not reside there or ever intend to do so, and no children

had ever resided there. Bringenberg also argued that TOD deeds under the TODA are not subject to the requirements of § 40-104, even if the Meadows house was the homestead. She noted that nowhere in the TODA and its detailed requirements for effectuating TOD deeds did the Legislature require a spouse's signature when the deed involves jointly owned property or a "homestead."

This was consistent, Bringenberg argued, with the intent of the TODA to allow TOD deeds to function as will substitutes that avoid probate. Under the TODA, any interest by the nontransferor spouse in the property remains intact and the beneficiary takes the real estate subject to it. The TOD deed does not operate as any conveyance or encumbrance until after the death of the transferor, at which time the real estate is no longer the homestead of "a married person." Both spouses, Bringenberg pointed out, need not execute and acknowledge one spouse's will in order for it to be valid. Thus, likewise, both spouses need not execute and acknowledge one spouse's TOD deed.

Bringenberg alternatively asserted that any homestead interest in the Meadows house was waived through the premarital agreement, the validity of which David did not challenge in his motion for partial summary judgment.

Both parties submitted evidence at the summary judgment hearing pertaining to David's and Eleanor's residency and intentions regarding the ownership of their properties. David also submitted evidence pertaining to the source of the funds to purchase the Meadows house. The court sustained David's objections to exhibits 11, 16, 17, and 19. Exhibit 11 is an affidavit by Eleanor's attorney, who had prepared the TOD deed. Exhibit 16 was a quitclaim deed executed in November 2014 for the farmhouse and property from David and Eleanor as joint tenants to David as the sole grantee. Exhibit 17 contained portions of David's deposition. Exhibit 19 contains text messages between James and his adult son, David's grandson, in February and March 2018.

Court's November 4, 2019, Order Granting
Partial Summary Judgment

On November 4, 2019, the court issued an order sustaining David's motion for partial summary judgment. The court found that the TOD deed is "void" as a matter of law. Accordingly, the court found that no ownership interest in the Meadows house transferred to Bringenberg upon Eleanor's death through the TOD deed.

In so ruling, the court reasoned that a TOD deed was an instrument of conveyance or encumbrance subject to the spousal joinder requirement of § 40-104. The court rejected Bringenberg's argument that § 40-104 did not apply because the Meadows house was not the marital homestead. The court reasoned that it did not need to decide whether the Meadows house was David's homestead, because it was Eleanor's homestead. Eleanor was a "married person," and she lived at the Meadows house; thus the court surmised, it was "the homestead of a married person" subject to § 40-104. Having found that the Meadows house was the homestead of Eleanor, "a married person," and noting it was undisputed that David did not execute and acknowledge the TOD deed, the court relied on the proposition stated in our case law that a valid acknowledgment must appear on the face of an instrument purporting to convey or encumber the homestead of a married person, or the instrument is wholly "void."[2] The court also presented several reasons why it concluded that David had not waived, through the premarital agreement, his homestead interest in the Meadows house as Eleanor's homestead.

---

[2] See, *Mutual of Omaha Bank v. Watson*, 297 Neb. 479, 900 N.W.2d 545 (2017), citing *Krueger v. Callies*, 190 Neb. 376, 208 N.W.2d 685 (1973); *Martin v. Norris Public Power Dist.*, 175 Neb. 815, 124 N.W.2d 221 (1963); *Trowbridge v. Bisson*, 153 Neb. 389, 44 N.W.2d 810 (1950); *Storrs v. Bollinger*, 111 Neb. 307, 196 N.W. 512 (1923); *Wilson v. Wilson*, 85 Neb. 167, 122 N.W. 856 (1909); *Whitlock v. Gosson*, 35 Neb. 829, 53 N.W. 980 (1892).

The court ordered Bringenberg to execute any deeds as needed to affirm ownership of the Meadows house back to Eleanor's estate. Thus, the court did not grant David's request to quiet title of the Meadows house solely in his name. It did not determine who had an ownership interest in the Meadows house. The court ordered that each party shall bear his or her own costs and fees.

The court, in its order granting David partial summary judgment, did not explicitly rule on David's request in his complaint for an injunction. The court also did not explicitly rule on Bringenberg's counterclaim for slander of title and her related request for an order that David's notice of lis pendens be stricken from the records of the register of deeds. Finally, the court did not explicitly rule on Bringenberg's "counterclaim" for damages as a result of David's allegedly frivolous complaint.

### Appeals and Subsequent District Court Orders

Counsel for David's estate filed on June 5, 2020, a suggestion of death and motion to substitute James, the personal representative of the estate, as the party plaintiff.

In relation to two attempts by Bringenberg to perfect appeals, dismissed by the Nebraska Court of Appeals for lack of appellate jurisdiction, the district court granted James' motion to dismiss Bringenberg's counterclaim as moot in light of the court's order granting partial summary judgment and, later, James' motion to dismiss all remaining alternative theories of recovery in David's complaint. Within 30 days of this last order, at which point there were no longer any outstanding claims by either party preventing a judgment as defined by Neb. Rev. Stat. § 25-1301 (Cum. Supp. 2018), Bringenberg filed another notice of appeal, docketed as the present case. We granted Bringenberg's petition to bypass the Court of Appeals.

## ASSIGNMENTS OF ERROR

Bringenberg assigns that the district court erred in (1) finding that the TOD deed was void because it was not signed by David; (2) finding that David "had a homestead interest" in the Meadows house; (3) finding that Eleanor had a homestead interest in the Meadows house; (4) not finding that any claim by David of a homestead interest was waived through the premarital agreement; (5) sustaining David's objection to exhibit 11; (6) sustaining David's objection to exhibit 16, portions of exhibit 17, and exhibit 19; (7) "failing to consider that the premarital agreement was recorded, meets the requirements of a deed, and effectively operates as a release of David's interest" in the Meadows house; and (8) dismissing Bringenberg's counterclaim.

The first and eighth assignments of error are the only assignments necessary to our disposition of this appeal, and we ultimately do not determine whether the court erred with respect to the remaining assignments.

## STANDARD OF REVIEW

[1] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[3] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[4]

[2] To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach

---

[3] *Jordan v. LSF8 Master Participation Trust*, 300 Neb. 523, 915 N.W.2d 399 (2018).

[4] *Id.*

an independent conclusion irrespective of the determination made by the court below.[5]

## ANALYSIS

[3-6] The question of whether § 40-104 applies to TOD deeds is a question of statutory interpretation that we must decide as a matter of law independently of the lower court.[6] This is the first occasion this court has had to address the meaning of any of the provisions of the TODA. When interpreting a statute, the starting point and focus of the inquiry is the meaning of the statutory language, understood in context.[7] It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.[8] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[9] For the reasons that follow, we hold that TOD deeds are not subject to the requirements of § 40-104. TOD deeds are transfers effective only after the death of the transferor, and they affect no rights of any persons or entities until after the transferor's death; therefore, they are not encumbrances or conveyances of the homestead by a married person.

## TODA

[7] The TODA was passed in 2012 and became operative January 1, 2013. The TODA is modeled after the Uniform Real Property Transfer on Death Act (Uniform Act) passed in 2009.[10] The TODA allows, through a TOD deed, for

---

[5] *Devney v. Devney*, 295 Neb. 15, 886 N.W.2d 61 (2016).

[6] See *id.*

[7] *Robinson v. Houston*, 298 Neb. 746, 905 N.W.2d 636 (2018).

[8] *Stewart v. Nebraska Dept. of Rev.*, 294 Neb. 1010, 885 N.W.2d 723 (2016).

[9] *Id.*

[10] See Unif. Probate Code § 6-401 et seq., 8 (part III) U.L.A. 392 (2013).

the nonprobate "transfer" of real estate after the death of the "transferor."

[8,9] TOD deeds are considered another step in what has been referred to as the "nonprobate revolution,"[11] whereby property changes hands after death through the nonprobate means of asset-specific will substitutes.[12] These are sometimes called nonprobate wills.[13] Prior to adopting the TODA, Nebraska had already recognized asset-specific nonprobate transfers such as payable-on-death accounts in financial institutions[14] and transfer-on-death motor vehicle certificates.[15] Such nonprobate wills are designed to provide an avenue for transferring property after death that is less expensive and time consuming than probate court proceedings.[16]

[10] Under the TODA, "[p]roperty" is "an interest in real property located in this state which is transferable on the death of the owner."[17] A transfer of such property through a TOD deed is "effective at the transferor's death"[18] and at all times until then is fully revocable.[19] It may be revoked by several means, including by an "inter vivos deed" that expressly or by inconsistency revokes the TOD deed in whole or in part.[20]

[11,12] A "[d]esignated beneficiary" of a TOD deed is the person designated to receive property in a TOD deed,[21]

---

[11] John H. Langbein, *The Nonprobate Revolution and the Future of the Law of Succession*, 97 Harv. L. Rev. 1108 (1984).

[12] Uniform Law Commission, Uniform Laws Update, Probate and Property (Kieran Marion ed., 2011).

[13] Langbein, *supra* note 11.

[14] Neb. Rev. Stat. §§ 30-2716 to 30-2733 (Reissue 2016).

[15] Neb. Rev. Stat. § 30-2715.01 (Reissue 2016).

[16] See Langbein, *supra* note 11.

[17] § 76-3402(6).

[18] § 76-3405.

[19] § 76-3406.

[20] § 76-3413(a)(1).

[21] § 76-3402(2).

while the "[b]eneficiary" is a person who actually receives property under a TOD deed.[22] The property transferred after death via a TOD deed is subject to inheritance taxes.[23]

[13] Section 76-3414 makes clear that during a transferor's life, a TOD deed does not affect any interest of the transferor, the transferee, or third parties:

During a transferor's life, a transfer on death deed does not:

(1) Affect an interest or right of the transferor or any other owner, including the right to transfer or encumber the property;

(2) Affect an interest or right of a transferee, even if the transferee has actual or constructive notice of the deed;

(3) Affect an interest or right of a secured or unsecured creditor or future creditor of the transferor, even if the creditor has actual or constructive notice of the deed;

(4) Affect the transferor's or designated beneficiary's eligibility for any form of public assistance except to the extent provided in section 76-3421;

(5) Create a legal or equitable interest in favor of the designated beneficiary; or

(6) Subject the property to claims or process of a creditor of the designated beneficiary.

[14-16] Section 76-3407 provides that "[a] transfer on death deed is nontestamentary." The provision of § 76-3407 that a TOD deed is nontestamentary was intended to clarify that the TOD deed does not have to be executed with the formalities of a will and does not need to be probated.[24] Section 76-3407, modeled after the Uniform Act, does not change the fundamental feature of a TOD deed that it does not operate until the

---

[22] See § 76-3402(1).

[23] See § 76-3410.

[24] Unif. Real Prop. Transfer on Death Act § 7 (Nat. Conf. of Comrs. on Unif. State Laws 2009).

transferor's death.[25] A TOD deed is not an inter vivos grant, or a grant "between the living."[26]

Many authorities have commented that the Uniform Act, by describing a "deed" that is neither an inter vivos grant nor a "testamentary" devise, has created an oxymoron for traditionalists who view deeds as inherently inter vivos.[27] For instance, long before the recognition of any asset-specific nonprobate transfers, we said there is only one test whether an instrument purporting to affect the title to land is "testamentary": to inquire whether it undertakes to vest any present interest or title therein.[28] "If it does not, but the title is to remain unaffected until the death of the owner, and an interest is then to accrue to the other party to the agreement, the contract is testamentary, and in ordinary cases revocable."[29]

Under the TODA, no interest is vested with the transferee until after the death of the owner. It is, therefore, in the traditional, common-law sense, testamentary. That said, Neb. Rev. Stat. § 30-2715(a) (Cum. Supp. 2020) provides in relevant part:

> Subject to sections 30-2333 and 30-2354, a provision for a nonprobate transfer on death in an insurance policy, contract of employment, bond, mortgage, promissory note, certificated or uncertificated security, account agreement, custodial agreement, deposit agreement, compensation plan, pension plan, individual retirement plan,

---

[25] *Id.*, § 12, comment.

[26] *Id.*, § 5.

[27] See Ronald R. Volkmer, *Nebraska's Real Property Transfer on Death Act and Power of Attorney Act: A New Era Begins*, 46 Creighton L. Rev. 499 (2013). See, also, e.g., Danaya C. Wright & Stephanie L. Emrick, *Tearing Down the Wall: How Transfer-on-Death Real-Estate Deeds Challenge the Inter Vivos/Testamentary Divide*, 78 Md. L. Rev. 511 (2019); Stephanie Emrick, *Transfer on Death Deeds: It is Time to Establish the Rules of the Game*, 70 Fla. L. Rev. 469 (2018).

[28] *Teske v. Dittberner*, 65 Neb. 167, 91 N.W. 181 (1902).

[29] *Id.* at 169, 91 N.W. at 181.

employee benefit plan, trust, marital property agreement, certificate of title, or other written instrument of a similar nature is *nontestamentary*.

(Emphasis supplied.) The designation in § 76-3407 of a TOD deed as "nontestamentary" is consistent with § 30-2715(a) and its designation of any nonprobate transfer on death, or nonprobate will, as "nontestamentary."

[17] Despite the confusion that may come from the abridgement of the traditional distinction between inter vivos grants and testamentary devises[30] as concerns a "deed," the Uniform Act has been praised as adding the legal certainty needed for effective estate planning.[31] "[TOD] deed is a term of art that has no common law background. It is something new, authorized by statute."[32] And the TODA, like the Uniform Act, describes the prerequisites and effects of the TOD deed in great detail.

[18,19] Looking at the TODA as a whole, TOD deeds are "inherently quitclaim deeds,"[33] with the important distinction that they take effect only upon the transferor's death and pass only whatever interest the decedent had in the property at death. On the death of the transferor, the beneficiary to the property subject to the TOD deed takes the property "subject to all conveyances, encumbrances, assignments, contracts, mortgages, liens, and other interests to which the property is subject at the transferor's death."[34] If the transferor is a joint owner and survived by another joint owner or owners, then the property that is the subject to the TOD deed belongs to the surviving joint owner or owners. Only if the transferor is the last surviving joint owner will the TOD deed be effective.[35]

---

[30] See Volkmer, *supra* note 27.

[31] See *id.* But see Wright & Emrick, *supra* note 27.

[32] Volkmer, *supra* note 27, 46 Creighton L. Rev. at 509.

[33] *Id*. at 517.

[34] § 76-3415(b).

[35] § 76-3415(c).

[20-22] Further, if other assets of the transferor's estate are insufficient to pay all claims against it, as well as statutory allowances to the transferor's surviving spouse and children, and the expenses of administration, then the beneficiary is subject to personal liability to the extent needed to pay all claims against the transferor's estate, statutory allowances to the transferor's surviving spouse and children, and the expenses of administration.[36] Any property subject to a TOD deed is includable in the calculation of the augmented estate under Neb. Rev. Stat. § 30-2314 (Reissue 2016).[37] A beneficiary who receives property through a TOD deed is liable to account to the personal representative of the transferor's estate for a proportionate share of the fair market value of the equity in the interest the beneficiary received to the extent necessary to discharge the claims and allowances remaining unpaid after application of the transferor's estate.[38]

[23] Section 76-3417 states that a "proceeding to account" may be brought against the beneficiary to assert liability for such claims against the estate and statutory allowances. A proceeding to account must be commenced within 1 year after the death of the transferor and may not be commenced unless the personal representative has received a written demand by the surviving spouse, a creditor, a child, or a person acting for a child of the transferor to do so.[39] Any assets recovered from a proceeding to account shall be administered as part of the transferor's estate.[40]

[24] Nothing in the TODA expressly contemplates any circumstance under which the TOD deed of a married grantor must contain the spouse's execution and acknowledgment in order to be valid. Section 76-3410(a)(1) states that the TOD

---

[36] § 76-3417(a).

[37] See Volkmer, *supra* note 27.

[38] § 76-3417(b)(1).

[39] § 76-3417(b)(2).

[40] § 76-3417(d).

deed "must contain the essential elements and formalities of a properly recordable inter vivos deed," "[e]xcept as otherwise provided in subdivision (2)," which in turn states that the TOD deed must provide that "the transfer to the designated beneficiary is to occur at the transferor's death." The TOD deed must be recorded within 30 days after being executed, but this recording creates no ownership rights or rights of priority against subsequent creditors or other claimants to the property that is the subject of the TOD deed.[41]

The conveyances statutes, Neb. Rev. Stat. §§ 76-201 to 76-281 (Reissue 2018), which are referenced by § 76-3410(a)(1), refer, logically, only to inter vivos grants. They refer to deeds by which real estate is created, aliened, mortgaged, or assigned or by which the title to any real estate is affected, and do not include last wills and leases for 1 year or less.[42] Such deeds involve a "grantor" and a "grantee."[43] Section 76-211 states:

> Deeds of real estate, or any interest therein, in this state, except leases for one year or for a less time, if executed in this state, must be signed by the grantor or grantors, being of lawful age, and be acknowledged or proved and recorded as directed in sections 76-216 to 76-237.

Section 76-238 gives protection to the grantee of an inter vivos deed by recording the deed with the register of deeds. Section 76-238 states in part:

> [A]ll deeds, mortgages, and other instruments of writing which are required to be or which under the laws of this state may be recorded, shall take effect and be in force from and after the time of delivering such instruments to the register of deeds for recording, and not before, as to all creditors and subsequent purchasers in good faith without notice.

---

[41] § 76-3410(a)(4); § 76-3414.

[42] § 76-203.

[43] See, e.g., § 76-209.

However, § 76-238 explicitly cross-references the TODA and exempts from this provision TOD deeds.

Section 76-216 of the conveyances statutes provides that "[t]he grantor must acknowledge the instrument with an acknowledgment as defined in section 64-205." Sections 76-217 to 76-237 elaborate upon the acknowledgment and recording process. None of the conveyances statutes expressly present any circumstance under which the deed of a married grantor must contain the spouse's execution and acknowledgement in order to be valid.

There has been no allegation that the TOD deed here at issue is deficient in any respect other than that it lacks the execution and acknowledgment by David, under the theory that § 40-104 of the homestead statutes applies. While the TODA specifically recognizes that the transfer may be subject to statutory allowances to the transferor's surviving spouse and children, it does not specifically address homestead protections. Likewise, the conveyances statutes that are incorporated by reference into the TODA make no reference to homestead protections.

## Homestead Statutes

[25] The homestead statutes are found in Neb. Rev. Stat. §§ 40-101 to 40-116 (Reissue 2016). We have explained that the purpose of the Legislature in enacting the homestead statutes was to protect the debtor and the debtor's family residing in a home from the forced sale of the home on execution or attachment.[44]

[26,27] The "requisite occupancy" is the most important factor in determining whether property is the homestead,[45] because this is the test established by the homestead statutes.[46]

---

[44] See, *Blankenau v. Landess*, 261 Neb. 906, 626 N.W.2d 588 (2001); *Giles v. Miller*, 36 Neb. 346, 54 N.W. 551 (1893). See, also, e.g., *Quigley v. McEvony*, 41 Neb. 73, 59 N.W. 767 (1894).

[45] *Giles v. Miller, supra* note 44, 36 Neb. at 349, 54 N.W. at 552.

[46] *Davis v. Kelly*, 62 Neb. 642, 87 N.W. 347 (1901).

The term "homestead" connotes "the house and land where the family dwells," "the house and parcel of land where the family reside and which is to them a home,"[47] and "the actual home of the family."[48] Who holds title to the property is not decisive of whether it is the homestead of both the husband and wife who are occupying it[49]; it is immaterial whether the title is in the one or the other, or part of it in one and part of it in the other, or in both as joint tenants or as tenants in common.[50] A homestead is not dependent upon ownership, and it does not create ownership interests.

[28] Homestead is defined by § 40-101 as follows:

A homestead not exceeding sixty thousand dollars in value shall consist of the dwelling house in which the claimant resides, its appurtenances, and the land on which the same is situated, not exceeding one hundred and sixty acres of land, to be selected by the owner, and not in any incorporated city or village, or, at the option of the claimant, a quantity of contiguous land not exceeding two lots within any incorporated city or village, and shall be exempt from judgment liens and from execution or forced sale, except as provided in sections 40-101 to 40-116.

Further, § 40-102 states:

(1) If the claimant is married, the homestead may be selected from the separate property of the claimant or, with the consent of the claimant's spouse, from the separate property of the claimant's spouse.

(2) If the claimant is not married, the homestead may be selected from any of his or her property.

We have explained that any interest in real estate, either legal or equitable, that gives a present right of occupancy or

---

[47] *Engen v. Union State Bank*, 121 Neb. 257, 264, 236 N.W. 741, 744 (1931) (internal quotation marks omitted).

[48] *First Trust Co. v. Bauer*, 128 Neb. 725, 728, 260 N.W. 194, 195 (1935).

[49] See *Stout v. Rapp*, 17 Neb. 462, 23 N.W. 364 (1885).

[50] 2 Joyce Palomar, Patton and Palomar on Land Titles § 395 (3d ed. 2003 & Supp. 2020).

possession, followed by exclusive occupancy, is sufficient to support a homestead right therein.[51]

[29,30] There are exceptions to the requirement of actual occupancy only where either (1) a property occupied as a homestead has been temporarily vacated without abandonment, and with a bona fide and subsisting intention to return, or (2) the claimant with the claimant's family have the bona fide present intention of making the property the homestead, some intervening obstruction prevents immediate actual possession, the claimant clearly manifests the intention of making the property the homestead to put others on notice, and the family occupies the land as circumstances reasonably permit.[52] While the amount of the proceeds from the sale of a homestead is protected for a period of 6 months from a sale executed and acknowledged by both spouses,[53] and may be reinvested into a new homestead, real estate purchased with the sale of a homestead does not become the new homestead unless the requisite occupancy, actual or constructive, is present.[54]

[31] Because the object of the homestead legislation is to conserve the family by "keeping a roof over it,"[55] the homestead, at least so long as the family continues to reside there[56] and to the extent it cannot be separated without depriving the family of its actual home,[57] is something more than the present worth of the exemption the homestead statutes allow.[58]

---

[51] *Blankenau v. Landess, supra* note 44.

[52] See *Davis v. Kelly, supra* note 46.

[53] § 40-116.

[54] See *Hair v. Davenport*, 74 Neb. 117, 103 N.W. 1042 (1905).

[55] *Landon v. Pettijohn*, 231 Neb. 837, 844, 438 N.W.2d 757, 762 (1989) (internal quotation marks omitted).

[56] See, *Baumann v. Franse*, 37 Neb. 807, 56 N.W. 395 (1893); *Stout v. Rapp, supra* note 49.

[57] See, *McIntosh v. Borchers*, 196 Neb. 109, 241 N.W.2d 534 (1976); *Struempler v. Peterson*, 190 Neb. 133, 206 N.W.2d 629 (1973).

[58] *Meisner v. Hill*, 92 Neb. 435, 138 N.W. 583 (1912).

[32] Section 40-104 was designed to accomplish the goal of keeping a roof over the family by preventing the possibility of the indivisible family home being unilaterally conveyed or encumbered by fraud, thereby interfering with the family's rights to occupancy.[59] Section 40-104 provides in full:

> Except as otherwise provided in this section, the homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both spouses. The interest of either or both spouses may be conveyed or encumbered by a conservator acting in accordance with the provisions of the Nebraska Probate Code and may also be conveyed or encumbered by an attorney in fact appointed by and acting on behalf of either spouse under any power of attorney which grants the power to sell and convey real property. Any claim of invalidity of a deed of conveyance of homestead property because of failure to comply with the provisions of this section must be asserted within the time provided in sections 76-288 to 76-298.
>
> A purchase agreement or contract for sale of homestead property signed by both spouses does not require acknowledgment to be enforceable.

Section 40-104 is the only homestead statute that utilizes the phrase "the homestead of a married person."

[33-35] We have held that an inter vivos deed conveying nonhomestead property is valid between the parties despite the lack of proper acknowledgment.[60] We have found an inter vivos conveyance of indivisible homestead property to be different. We have held that under § 40-104, the conveyance of the family homestead away from the family during the conveyor spouse's lifetime without both spouses' execution and

---

[59] See *id.*

[60] See *Mutual of Omaha Bank v. Watson, supra* note 2.

acknowledgment is invalid.[61] However, we have clarified that the "statutory provision requiring the conveyance of a homestead to be executed by both husband and wife applies to a homestead in which both have a homestead interest" and cannot be relied on by a spouse who lacks the requisite occupancy to invalidate the occupying spouse's unilateral encumbrance or conveyance of real estate.[62]

[36] But even when both spouses have a homestead interest in the real estate, we have never held that a spouse cannot validly devise an ownership interest in homestead property without the other spouse executing and acknowledging the will. To the contrary, we have always recognized the validity of a spouse's unilateral devise of that spouse's title to the homestead real estate via a last will and testament, albeit subject to the homestead allowance and the surviving spouse's statutory life estate, when that was in effect.[63] Statutes in other jurisdictions requiring both spouses' execution and acknowledgment for a conveyance or an encumbrance of the homestead are similarly understood as applying to inter vivos acts during the marriage, but not to testamentary dispositions after death.[64] As stated in *Cain v. Bunkley*,[65] in considering a statute similar to § 40-104, the statutory prescription of certain forms by which a married person might convey or encumber an estate applies

---

[61] See *id.*

[62] *Engen v. Union State Bank, supra* note 47, 121 Neb. at 265, 236 N.W. at 745. See, also, *Cunningham v. Marshall*, 94 Neb. 302, 143 N.W. 197 (1913).

[63] See, e.g., *Gordon v. Gordon*, 140 Neb. 400, 299 N.W. 515 (1941); *In re Estate of Grobe*, 101 Neb. 786, 165 N.W. 252 (1917); *Meisner v. Hill, supra* note 58; *Brichacek v. Brichacek*, 75 Neb. 417, 106 N.W. 473 (1906); 5 Herbert Thorndike Tiffany, The Law of Real Property § 1338 (3d ed. 1939 & Cum. Supp. 2003).

[64] See, Gregory J. Duncan, *Home Sweet Home? Litigation Aspects to Minnesota's Descent of Homestead Statute*, 29 William Mitchell L. Rev. 185 (2002); *Cain v. Bunkley*, 35 Miss. 119 (1858).

[65] *Cain v. Bunkley, supra* note 64.

only to inter vivos instruments and not to dispositions that take effect after death.

[37] It has been generally stated that homestead statutes do not prohibit testamentary disposition of the homestead premises by the owner, although sometimes the surviving spouse and children are given by statute certain rights in the land.[66] Neb. Rev. Stat. § 40-117 (1943) once provided that the surviving spouse of a homestead was entitled to a life estate in the real estate, which was exempt from payment of any debt or liability contracted by or existing against the husband and wife or either of them before the death of such husband or wife. That statute was repealed in 1974.

[38] The right to unilateral testamentary disposition of one spouse's interest in homestead premises is consistent with the fact that a homestead right revolves around occupancy and does not depend upon or create ownership interests. A spouse with title to the property, in whole or in part, does not, by permitting the property to be occupied as the family homestead, give up the right that spouse would otherwise have to devise that spouse's ownership interest.[67]

### TOD Deed Is Not Conveyance or Encumbrance of Homestead of Married Person

As discussed, a TOD deed is like a will in virtually every respect except it does not pass through probate. A TOD deed, a nonprobate will, is not effective until the transferor's death, creates no legal or equitable interest in favor of the designated beneficiary interest during the transferor's life, does not affect rights of third parties during the transferor's lifetime, is fully revocable, and transfers upon death no more than whatever unencumbered ownership interest the transferor had at death. The beneficiary takes the property "subject to all conveyances, encumbrances, assignments, contracts, mortgages, liens,

---

[66] 5 Tiffany, *supra* note 63.

[67] See *Cain v. Bunkley, supra* note 64.

and other interests to which the property is subject at the transferor's death"[68] and will be liable to the estate for a proportionate share of the fair market value of the equity of the interest the beneficiary received to the extent the estate's assets are insufficient to pay all claims against it, including the statutory homestead allowance. We agree with Bringenberg that there is no logical reason why, in order to be valid, a TOD deed would require the nontransferor spouse to execute and acknowledge it, when one spouse's last will and testament devising an interest in homestead property need not be executed and acknowledged by the other spouse in order to be valid.

More important, the plain language of the relevant statutes does not require the nontransferring spouse to execute and acknowledge a TOD deed when the property subject thereof is the homestead. Looking at the plain language of § 40-104, the word "convey" expresses intention to pass title and is equivalent to the word "grant."[69] For every "grant," there is a "grantor" and a "grantee."[70] An encumbrance is any right that a third person holds in land which constitutes a burden or limitation on the rights of the fee titleholder.[71] These terms all connote that the instrument at issue has an inter vivos effect. The TODA, in contrast, does not utilize any of these terms. The TODA instead describes a "transfer" between a "transferor" and a "beneficiary." This is the language of a "devise," the passing of title of real estate upon death.[72]

[39] What occurs upon a transferor's death to property that is the subject of a TOD deed is not a conveyance or an encumbrance, but a devise. As such, a TOD deed does not fall

---

[68] § 76-3415(b).

[69] *Wilson v. Buffalo Collieries Co.*, 79 W. Va. 279, 91 S.E. 449 (1916).

[70] See *Krause v. Crossley*, 202 Neb. 806, 277 N.W.2d 242 (1979).

[71] See, *Hartman v. Drake*, 166 Neb. 87, 87 N.W.2d 895 (1958); *Brewer v. Peatross*, 595 P.2d 866 (Utah 1979).

[72] See, *In re Schauer*, 246 B.R. 384 (D. N.D. 2000); *Miller v. Bower*, 260 Pa. 349, 103 A. 727 (1918); *Mills v. Tompkins*, 110 A.D. 212, 97 N.Y.S. 9 (1905).

under the plain language of § 40-104. Moreover, Bringenberg is correct that because a TOD deed has no effect until after the transferor's death, its subject is not the homestead of a "married person" at the time of the transfer.

We have construed the homestead protections for the purpose of protecting and preserving the home for those who would benefit by the provisions of such law,[73] but we would be reading into the statutes things that are not there if we were to conclude that a spouse's ownership interest in a homestead property cannot validly be devised through a TOD deed without the other spouse's execution and acknowledgment thereof. That, we cannot do.

[40,41] As discussed, the detailed provisions of the TODA, while incorporating certain conveyances statutes and explicitly recognizing that a transfer under a TOD deed is includable in the calculation of the augmented estate under § 30-2314, fail to incorporate any reference to § 40-104, the homestead right, or the need for both spouses' execution and acknowledgment in any circumstance. When reading a statute, what it does not say is often as important as what it does say.[74] Silence can be a meaningful indicator of statutory meaning.[75] The Legislature's failure to include any reference in the TODA to the homestead right is consistent with our reading of the plain language of the two statutory schemes here at issue.

[42-44] We also note that in determining the meaning of a statute, the applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of the preexisting legislation.[76] We presume the Legislature knowingly did not provide that both spouses must, under § 40-104, execute and acknowledge a TOD deed pertaining

---

[73] *Dougherty v. White*, 112 Neb. 675, 200 N.W. 884 (1924).

[74] *Robinson v. Houston, supra* note 7.

[75] *Id.*

[76] *Ameritas Life Ins. v. Balka*, 257 Neb. 878, 601 N.W.2d 508 (1999).

to homestead property in order for it to be valid.[77] We presume the Legislature knowingly utilized different terminology in the TODA than the inter vivos terminology utilized in § 40-104. Section 40-104 has never been construed to apply to last wills and testaments pertaining to homestead property, and it was never meant to apply to a TOD deed, a term of art for a nonprobate will authorized by the TODA, which has no common-law background and did not exist when § 40-104 was adopted.[78]

## DISPOSITION

Because we hold that, as a matter of law, § 40-104 does not apply to TOD deeds, regardless of whether they concern homestead property, the district court erred in granting summary judgment to David by declaring the TOD deed void for failing to satisfy § 40-104. The district court was called upon to decipher ancient and convoluted case law surrounding the homestead statutes, which has been affected by the repeal of several homestead provisions. At the same time, it was confronted with the TODA, which this court has never before addressed. Our disposition, while finding that the district court erred, does not impugn its efforts to conscientiously address the issues before it.

Because § 40-104 does not apply to TOD deeds, we need not determine whether the district court erred in finding there was no genuine issue of fact concerning whether the Meadows house was the homestead of a married person for purposes of § 40-104. Whether the Meadows house was the homestead is not material. We likewise do not address Bringenberg's assignments of error relating to the court's evidentiary rulings that pertained to the question of whether the Meadows house was the homestead. For similar reasons, whether the premarital agreement waived David's homestead rights under § 40-104 is not material and need not be addressed.

---

[77] See *id.*

[78] Volkmer, *supra* note 27.

The TOD deed could devise to Bringenberg only whatever interest Eleanor had in the Meadows house at the time of her death. The district court made no determinations regarding any party's ownership interests in the Meadows house. And our holding that the TOD deed was not invalid under § 40-104 does not determine what interest in the Meadows house, if any, Eleanor had to devise.

Because we reverse the district court's order of partial summary judgment declaring the TOD deed void, Bringenberg's counterclaim for slander of title is no longer moot. We reverse, and remand for the court to consider the merits of Bringenberg's counterclaim in light of any equitable interests James may raise, on remand, in the Meadows house.

## CONCLUSION

For the foregoing reasons, we reverse the rulings of the district court granting David's motion for partial summary judgment, declaring the TOD deed void, and dismissing Bringenberg's counterclaim. We remand the cause with directions to consider the merits of Bringenberg's counterclaim.

REVERSED AND REMANDED WITH DIRECTIONS.

HEAVICAN, C.J., not participating.